

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JUYI LI, individually and on behalf
of a class of those similarly
situated, *et al.*,

                **Plaintiffs,**

v.

**UNITED STATES CITIZENSHIP AND**
**IMMIGRATION SERVICES, *et al.*,**

                **Defendants.**

Case No. 2:21-cv-677

**Judge Michael H. Watson**

**Magistrate Judge Vascura**

## <u>CONSENT ORDER</u>

### I.    INTRODUCTION

The Plaintiffs named in the caption of the Complaint (hereinafter

"Plaintiffs") and Defendants United States Citizenship and Immigration Services

("USCIS"), Tracy Renaud, Ernest DeStefano, United States Immigration and

Customs Enforcement ("ICE"), Tae Johnson, and Corey Price (hereinafter

"Defendants") hereby agree to the entry of this Consent Order in full and final

settlement of all claims asserted by Plaintiffs.

Plaintiffs initiated this Complaint on February 16, 2021, seeking temporary,

preliminary and permanent mandatory injunctive relief, declaratory relief, and a

writ of mandamus to compel Defendants to open, process and adjudicate

applications submitted by Plaintiffs and unnamed class members on an expedited and immediate basis.

Defendants deny all of Plaintiffs' allegations and state that this Consent Order is not, is in no way intended to be, and should not be construed as an admission of liability or fault on the part of Defendants, the United States, or their agents, servants, or employees.

Plaintiffs and Defendants have been engaged in good faith settlement discussions since the filing of this case, obviating the need for Plaintiffs to file a Motion for Injunctive Relief.  Based on the continued discussions, Plaintiffs have determined that it is in their interests and the interests of Putative Class Members to settle this Action quickly on the terms set forth below, and thereby address the immediate and irreparable harm that is alleged to have existed.  Defendants also consider it desirable to settle the claims alleged in this case and to end this Action on the terms set forth below to avoid the risk, expense, and burden of protracted litigation.  All Parties have compromised certain claims, defenses and remedies to reach a negotiated resolution.

## A. Plaintiffs and Putative Class Members

1.   The Plaintiffs named in the caption of the Complaint are parties to this Consent Order.

2.   The putative class has not been certified; therefore, the Putative Class Members are not parties to this Action or the Consent Order.

However, the Parties intend that Putative Class Members will fully benefit from the relief described below.

3.      Plaintiffs represent and agree that they are each of legal age and mentally competent to agree to this Consent Order. Plaintiffs further represent that they each fully understand their right to discuss this Consent Order with an attorney; that to the extent, if any, they so desired, they have availed themselves of this opportunity; that they fully understand all provisions of this Consent Order; and that they are voluntarily entering into this Consent Order with full understanding of its legal consequences and without any duress.

## B. Defendants

1.      Defendant United States Citizenship and Immigration Services is an agency of the United States Department of Homeland Security (hereinafter "DHS/USCIS").

2.      Defendant Tracy Renaud, in her official capacity, is the Senior Official Performing the Duties of the Director of the USCIS.

3.      Defendant Ernest DeStefano, in his official capacity, is the Chief of the Office of Intake and Document Production, USCIS.

4.      Defendant United States Immigration and Customs Enforcement is a federal law enforcement agency of the United States Department of Homeland Security (hereinafter "ICE").

5.      Defendant Tae Johnson, in his official capacity, is the Acting Director of ICE.

6.      Defendant Corey Price, in his official capacity, is the ICE Acting Executive Associate Director for Enforcement and Removal Operations.

## C. Agreement to this Consent Order

As indicated by the signatures appearing below, the Parties and the Court agree to the entry of this Consent Order.

## II.    DEFINITIONS

Capitalized terms in this Consent Order shall be defined as follows:

**"Action"** means the civil action captioned Juyi Li, *et al*. v. United States Citizenship and Immigration Services, *et al*., No. 2:20-cv-03707, United States District Court for the Southern District of Ohio.

**"Benchmark(s)"** means the agreed-upon date for completion of certain events, articulated in Section IV.

**"Consent Order"** means the Parties' compromise of disputed claims approved by the presiding judge.

**"Court"** means the United States District Court for the Southern District of Ohio.

**"Defendants' Counsel"** means the United States District Attorney's Office for the Southern District of Ohio.

**"I-765"** means USCIS Form I-765, Application for Employment Authorization.

**"Lockbox"** means the secure facility used to accelerate the collection and deposit of receipts. The Lockbox electronically captures data and images from applications and petitions, and performs fee receipting and deposit.

**"Optional Practical Training" or "OPT"** means temporary employment directly related to an F-1 student's major area of study. Eligible students can apply to receive up to 12 months of OPT employment authorization before completing their academic studies (pre-completion) and/or after completing their academic studies (post-completion).

**"Parties" or "Party"** means Plaintiffs and/or Defendants.

**"Plaintiffs"** mean the individuals named as Plaintiffs in the caption of the Complaint.

**"Plaintiffs' Counsel"** means those individuals designated as Plaintiffs' Counsel of record before this Court.

**"Post-Completion OPT"** means temporary employment directly related to an F-1 student's major area of study for employment occurring after completion of academic studies.

**"Putative Class Member(s)"** means all students in F-1 nonimmigrant status whose Form I-765 for post-completion optional practical training (OPT) or for the STEM OPT extension was received between October 1, 2020 and October 31, 2021.

"**Received**" means USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request whether electronically or in paper format.

"**Settled Claims**" means all claims for declaratory, equitable and injunctive relief that were brought or could have been brought on behalf of the Plaintiffs based on the facts and circumstances alleged in the Complaint, ECF No. 1.

"**STEM OPT**" means temporary employment that F-1 students with a qualifying science, technology, engineering, or mathematics (STEM) degree may apply to USCIS for, to complete a 24-month extension of their post-completion OPT.

It is hereby **ORDERED, ADJUDGED, and DECREED**:

## III.   INTERIM RELIEF

1.  For post-completion OPT or STEM OPT Form I-765 applications received on or after October 1, 2020, through October 31, 2021, inclusive, USCIS will:

    a.  Issue EADs for up to 12 months of post-completion OPT commencing from the date of approval of the Form I-765 for post-completion OPT, regardless of whether the 14-month period would have expired during the EAD validity dates.

    b.  Approve Form I-765 for post-completion OPT with validity dates reflecting the same amount of time originally recommended by the designated school official ("DSO") from their school on the Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, if eligible, up

to the maximum 12-month period permitted under regulations governing post-completion OPT.

c. Where an EAD has already been issued to a Putative Class Member for whom the DSO had recommended the full 12 months, but the EAD was issued with a validity period of less than 12 months, upon receipt of the Putative Class Member's request for correction as indicated on the USCIS website, issue a corrected EAD with a new end date to cover the full amount of post-completion OPT time recommended in the original application, if eligible, up to the maximum 12-month period permitted under regulations governing post-completion OPT.

d. Allow Putative Class Members whose original, timely Form I-765 for post-completion OPT and STEM OPT were received on or after October 1, 2020, through October 31, 2021, inclusive, and whose applications were subsequently rejected, to resubmit the application and treat the application as though it were received on the original received date if it is received by November 30, 2021.

e. Allow applicants resubmitting a Form I-765 pursuant to "d" above for post-completion OPT or STEM OPT to submit the application without obtaining a new Form I-20 with an updated OPT recommendation from the DSO, as long as they originally submitted an application for post-completion OPT within 30 days of the DSO's recommendation or

an application for STEM OPT within 60 days of the DSO's recommendation as required by the regulations.

 f. Issue a Request for Evidence ("RFE"), instead of a denial, for a missing or deficient signature, if a Form I-765 application for post-completion OPT or STEM OPT was already accepted at a USCIS lockbox.

2. For post-completion OPT Form I-765 applications received on or after the date of the Consent Order until October 31, 2021, USCIS will allow foreign students to submit the Form I-765 up to 120 days before the end of their program date, rather than 90 days before the end of their program date.

3. For Putative Class Members whose applications are ultimately approved, duration of status will be defined as the period beginning on the date that the student's application for OPT was properly filed and pending approval, including the authorized period of post-completion OPT, and ending 60 days after the OPT employment authorization expires, consistent with 8 CFR § 214.2(f)(10)(ii)(D).

## IV. AGREED-UPON TIMELINE

1. Subject to Section VI., USCIS agrees to comply with the following Benchmarks from the date the Consent Order is entered by the Court:

 a. For properly filed post-completion OPT (and STEM OPT) I-765 applications mailed to the Chicago ("CHI") lockbox at the correct

P.O. Box, or physical address with the correct "Attn" line, USCIS represents that it is issuing receipt notices within two (2) weeks of receiving the OPT I-765 (including STEM OPT) application. Therefore, there are no receipting delays for the OPT I-765 (including STEM OPT) applications correctly mailed to the CHI lockbox.

b. USCIS agrees that it will process OPT I-765 (including STEM OPT) applications within 120 days of receipt. By "process," USCIS means that the application will be reviewed by an officer and acted upon, including to approve, deny, issue an RFE, Notice of Intent to Deny (NOID), or refer the case for investigation.

2. The above Benchmarks in this Consent Order will be tolled in circumstances including those outlined below:

a. There is a quarantine, or other action, due to health concerns, such as COVID-19, which affects the relevant USCIS office, file rooms, or officers assigned to these cases.

b. Any other event beyond the control of USCIS, including, but not limited to, weather related events or software or hardware malfunction that affects USCIS's ability to process these applications.

c. If any of the aforementioned circumstances become evident to USCIS, Defendants' Counsel will promptly notify Plaintiffs'

Counsel of such circumstances and the Parties will negotiate an extension.

## V.   REPORTING

1.   USCIS agrees to provide a monthly report to Plaintiffs' Counsel with the aggregate number of cases that USCIS did not process within 120 days.

2.   The reporting will only include aggregate data for cases that have not been approved or denied on the date the Consent Order is entered, or cases that are filed on or after the date of the Consent Order through the time period identified in Section III.1, including cases identified in Section III.1.d.

3.   The first report will be provided on August 13, 2021.  Subsequent monthly reports will be provided no later than the 10th business day of the month, ending when the Court's jurisdiction and the terms of the Consent Order automatically terminate pursuant to Section VII.1. of this Consent Order.

## VI.   NOTICE AND APPROVAL PROCEDURE

A. Court Approval

Promptly after the Parties' execution of this Consent Order, the Parties shall jointly move the Court for an Order approving this Consent Order.

B. Notice

Promptly after the Court's entry of this Consent Order, the Parties shall effectuate the following:

1.    Plaintiffs' Counsel shall post the Consent Order on the OPT Class Action website (http://optclassaction.com/);

2.    Defendants shall email a link to the Consent Order, posted in accordance with Section VI.B.3, to Designated School Officials ("DSOs") who receive SEVIS broadcast messages with an advisal that it can be shared as appropriate;

3.    USCIS shall post the Consent Order on USCIS's website on the Legal Settlement Notices webpage (https://www.uscis.gov/laws-and-policy/other-resources/uscis-class-action-settlement-notices-and-agreements) and the Optional Practical Training webpage (https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students), or any successor webpages as appropriate; and

4.    USCIS's Office of Public Affairs shall email a link to the Consent Order, posted in accordance with Section VI.B.3, to its subscribed users.

## VII.   IMPLEMENTATION, ENFORCEMENT, AND FEES

1.    The Court will retain exclusive jurisdiction to enforce the terms of the Consent Order.  Unless a Party successfully petitions the Court to enforce, modify and/or extend this Consent Order, the Court's

jurisdiction and the terms of the Consent Order shall terminate automatically after Defendants have fully processed all applications received on or before October 31, 2021, and have reported to Plaintiffs' counsel that they have fully satisfied their obligations under this Consent Order.

2.    All Parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.

3.    Should Plaintiffs' Counsel believe in good faith that Defendants are out of compliance with the requirements of this Consent Order, Plaintiffs' Counsel shall promptly notify Defendants' Counsel, in writing, of the specific grounds upon which noncompliance is alleged. Within five (5) business days after receipt of the notice from Plaintiffs' Counsel, Defendants' Counsel shall notify Plaintiffs' Counsel of Defendants' position and any action it has taken or intends to take in connection therewith. The Parties shall negotiate in good faith in an effort to resolve any remaining disputes. The Parties agree that this negotiation period will be considered exhausted and either Party may seek relief from the Court if either Party determines that negotiations have reached an impasse.

4.     The Parties have resolved the matter of Plaintiffs' Counsel's claim for fees plus costs and expenses, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) and 5 U.S.C. § 504 et seq., as follows: Within sixty (60) days of entry of the Consent Order, Defendants will deliver to Plaintiffs' Counsel the sum of $45,000, in settlement of all claims for attorneys' fees and costs that were or could have been or will be claimed in this litigation. Defendants' payment of the sum identified above shall satisfy any claims by Plaintiffs and Plaintiffs' Counsel for attorneys' fees and costs related to and for the Action. However, subject to the obligations under Section VII.2 and VII.3 above, nothing in this paragraph shall be construed to preclude Plaintiffs' Counsel from seeking fees, costs, and expenses, as appropriate, incurred in seeking judicial enforcement of this Consent Order, in seeking to vacate the Consent Order, and/or in litigating this matter after the Consent Order is vacated.

5.     Plaintiffs' Counsel agree to provide Defendants with all information necessary to accomplish payment of the negotiated EAJA amount within five (5) days of the entry of the Consent Order. Defendants obligations under Section VII.4 of the Consent Order will be tolled until such time as all the necessary information to accomplish payment is received from Plaintiffs' Counsel.

The Parties agree that payment will be made to Plaintiffs' Counsel who have authorization to collect these funds on behalf of Plaintiffs.

## VIII.  TERMINATION OF OBLIGATIONS

1.     The obligations under this Consent Order shall automatically terminate at the same time as the Court's jurisdiction.  At that time, this Consent Order shall dissolve without further action and Plaintiffs' claims will be dismissed with prejudice.

## IX.   RELEASE OF CLAIMS

1.     Upon the dissolution of this Consent Order as found at "Termination of Obligations," Section VII. 1., the Parties hereby mutually release and forever discharge one another and their past and present respective officers, agents, and employees, from any and all claims, demands, suits, rights, damages, administrative remedies, and causes of action of any kind, nature, and character, known and unknown, arising from or related to the circumstances described in Plaintiffs' Verified Class Action Complaint, as of the date of the entry of this Consent Order.  And the Plaintiffs shall forever be barred and enjoined from bringing or prosecuting any Settled Claim against any of the Defendants, and all of their past and present agencies, officials, employees, agents, attorneys, and successors.

2.     The Parties agree that should any provision of this Consent Order be declared or determined by any court of competent jurisdiction to be

illegal, invalid, or unenforceable, the remainder of the Consent Order shall nonetheless remain binding and in effect.

## X.   NO ADMISSION OF WRONGDOING

1.   The Consent Order, whether or not executed, and any proceedings taken pursuant to it:

   a. Shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against Plaintiffs and Putative Class Members, consistent with the Constitution and laws of the United States, and applicable regulations;

   b. Shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by the Plaintiffs or the validity of any claim that was asserted in the Action or in any litigation or the deficiency of any defense that has been or could have been asserted in the Action or of any liability, negligence, fault, or wrongdoing of the Defendants, or any admission by the Defendants of any violation of or failure to comply with the Constitution or laws of the United States, or any regulations; and

   c. Shall not be offered or received against the Defendants as evidence of a presumption, concession, or admission of any

liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Consent Order; provided, however, that if this Consent Order is approved by the Court, Defendants may refer to it and rely upon it to effectuate the liability protection granted them hereunder.

## XI.   MISCELLANEOUS

1.   This Consent Order constitutes the full and complete agreement among the Parties and fully supersedes any and all prior agreements or understandings among the Parties pertaining to the subject matter of this Action. There are no oral side agreements or understandings. No other promises or agreements shall be binding unless signed by the Parties.

2.   This Consent Order shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the Parties hereto.

3.   The Parties agree that the terms of this Consent Order are based only on specific circumstances related to this matter alone; no precedent is established by this Consent Order.

4.   The Parties agree that this Consent Order may be made public, and all Parties expressly consent to such release and disclosure.

5.   It is contemplated that approval of this Consent Order may be executed in several counterparts, with a separate signature page for each Party's counsel. All such counterparts and signature pages, together, shall be deemed to be one document.

6.   The Parties agree that the dates described herein refer to calendar days, unless otherwise stated. If the date for performance of any act required by or under this Consent Order falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Consent Order.

7.   The Parties agree to accept an electronic signature or a handwritten signature transmitted electronically by any Party to this Consent Order. Such a signature shall have the same legal effect and shall be equally enforceable in law and/or equity as the handwritten original signature.

8.   In the event that the Court modifies or does not approve the Consent Order, the Parties' good-faith adherence to its terms prior to said modification or non-approval shall not be considered unlawful.

_____/s/ Michael H. Watson_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

Agreed to by:

VIPAL J. PATEL
United States Attorney

| | |
|---|---|
| s/Christopher R. Yates | s/Caroline H. Gentry |
| CHRISTOPHER R. YATES (0064776) | CAROLINE H. GENTRY (0066136) |
| STEPHANIE M. RAWLINGS (0075068) | Porter Wright Morris & Arthur LLP |
| Assistant United States Attorney | One South Main Street, Suite 1600 |
| 303 Marconi Boulevard, Suite 200 | Dayton, Ohio 45402 |
| Columbus, Ohio 43215 | E-mail: cgentry@porterwright.com |
| E-mail: christopher.yates@usdoj.gov | |
| E-mail: stephanie.rawlings@usdoj.gov | and |
| | |
| *Attorney for Defendants* | Robert H. Cohen (0009216) |
| | Kirsten R. Fraser (0093951) |
| | Porter Wright Morris & Arthur LLP |
| | 41 South High Street, Suites 2800-3200 |
| | Columbus, Ohio 43215 |
| | E-mail: rcohen@porterwright.com |
| | E-mail: kfraser@porterwright.com |
| | |
| | *Attorneys for Plaintiffs* |